

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,094

**DAMEON JAMARC MOSLEY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM CAUSE NO. 114-0510-17
### IN THE 114TH DISTRICT COURT
### SMITH COUNTY

WALKER, J., filed a concurring opinion, in which RICHARDSON, J., joined.

### CONCURRING OPINION

I join the Court's opinion and judgment upholding Appellant Dameon Jamarc Mosley's conviction and sentence. I wish to address Appellant's argument at trial that, although he fully intended to commit a robbery of the Conoco, he did not intend to kill the attendant and that his gun accidentally went off during the brief struggle. The evidence showed that Appellant used a revolver. As the prosecutor recognized yet defense counsel failed to appreciate, the use of a revolver is an important fact that is enough to shut down almost any accident defense.

As I have previously emphasized: "it is almost impossible to accidentally or involuntarily fire a fully-functioning double-action revolver *unless the hammer is in the cocked position*." *Piper v. State*, No. PD-0712-18, 2019 WL 4315756, at *7 (Tex. Crim. App. Sept. 11, 2019) (Walker, J., concurring) (not designated for publication). Instead, "the physical reality of the gun itself strongly militates against any claim that it was accidentally or involuntarily fired." *Id.* Attorneys on both sides of the aisle—prosecutors and defense counsel—must be aware that accident claims are incredibly weak where a revolver is involved.

In Appellant's case, the evidence showed that Appellant entered the Conoco station armed with a revolver, jumped over the counter, physically confronted the attendant, and then shot the attendant twice after the attendant kicked at Appellant and they struggled. His defensive strategy at trial was to seek a conviction for the lesser included offense of felony murder, based on the theory that, although he fully intended to commit a robbery of the Conoco, he did not intend to kill the attendant and the gun just went off during the struggle.[1] The prosecution's handling of Appellant's "gun just went off" theory presents a case study of how to address that argument.

The State presented evidence showing not only that the murder weapon was a revolver, but also explaining how revolvers work. Firearm and tool mark examiner Stacey Phetteplace examined the bullets recovered during the autopsy and determined that both were fired from the same firearm.

---

[1] Defense counsel's opening statement laid it out:

> On January 28th, 2017, Dameon Mosley, along with the assistance of Kedarius Oliver and Lamarcus Hannah, went into the Conoco station to rob the station. Do I need to repeat it? He went in there with the intent to rob.
> But, ladies and gentlemen, he did not have the intent to kill Mr. Stacks. In that struggle, that gun goes off. And when you commit a felony in the State of Texas and in the course of committing that felony, you do an act clearly dangerous to human life, you are guilty of felony murder, not capital murder.

Additionally, Phetteplace testified:

Q.    . . . Did you have any other opinions about what type of firearm that these bullets were fired from?

A.    I —

Q.    Not brand, but —

A.    Type of firearm. They were fired from a revolver.

Q.    And how do you know that?

A.    The — as I described earlier, with a revolver, there's a gap between the cylinder and the bore, and there's a forcing cone that forces that bullet into the bore. The — both the bullets had forcing cone marks that were in front of the rifling marks.

Typically, we'll see that on — the curvature of the bullet will be curved, as you can see in this picture, towards the nose. It curves towards the center. The forcing cone marks were up on that curve of the bullet, and they were found on both of the bullets, which is an indication that it was fired from a revolver.

In addition, most .38-caliber bullets that — that have this type of shape are commonly loaded into .38 Special cartridges, which is commonly used in revolvers, although — Smith & Wesson does make a pistol that also shoots a .38 Special cartridge. But most of the guns are on the list are listed as revolvers.

Phetteplace later confirmed that it was unknown whether the gun was a single-action or a double-action revolver, but explained how both types worked to the jury:

A.    With a single-action revolver, the — the hammer has to be manually pulled back and then the trigger pulled in order to fire the revolver.

The trigger only has one function, and that is to cause the firearm — cause the hammer to fall.

In a double-action firearm, the trigger can pull the hammer back and release it. So it does two steps so it's called a double-action.

Q.    So a single-action is kind of like what you see — it may not look the same, but kind of like what you see in westerns. You know, the cowboy pulls it out — pulls the hammer back and —

A.    Yes, that's correct.

Q.    And then a double-action, you pull the trigger, and the hammer goes back and falls?

A.    Yes.

. . .

Q.    Okay. Now, we talked about single-action versus double-action revolver.

A.    Yes.

Q. Okay. So if I had a single-action — I want to be clear about this. If I have a single-action revolver, how do I go about firing that revolver?

A. In a single-action revolver, the first step after loading the chamber would be to pull the hammer back. When the hammer is pulled back, the cylinder will rotate to align the cartridge with the — with the barrel or the bore.

And then when you are ready to shoot the revolver, you pull the trigger, the hammer falls, it causes the firearm — depending on the firearm, it either has a firing pin in the hammer, or it hits a firing pin, and it causes the firing pin to hit the primer which causes the discharge.

Q. So in order to fire it, to be clear, I have to have pulled the trigger back manually with my thumb or hand or something —

A. The hammer, not the trigger.

Q. Yeah. Sorry. You have to pull the hammer back, and at that point, you have to pull the trigger?

A. Yes.

Q. Okay. Now, a double-action, how do you fire that again?

A. In a double-action, the hammer could be set in the position that you see on the screen. You pull the trigger, the hammer will cock. And as the hammer is being cocked, the cylinder will rotate to align the next chamber with the bore. And in the same motion, the — when the trigger reaches the rear of the trigger guard, the hammer will fall and cause a discharge.

A. Okay. You actually have to pull the trigger with a double-action, which causes the hammer to go back, and then it eventually falls forward and —

A. Yes.

Q. — which causes the bullet to shoot?

A. Yes.

The prosecutor then asked Phetteplace about shooting twice:

Q. . . . How would you shoot a single-action revolver twice?

A. For every time you — on a single-action revolver, every time you shoot it, you have to pull the hammer back and pull the trigger, pull the hammer back and pull the trigger.

Q. And how about a double-action?

A. The double-action, you just keep pulling the trigger.

Q. Okay. So if I have a single-action, you said I have to pull the hammer back, pull the trigger, pull the hammer back, pull the trigger?

A. Yes.

Q. And double-action, every time you pull the trigger, the cylinder rotates —

A. Yes.

Q. — and it will fire?

The State then had Phetteplace view the surveillance footage of the robbery. Phetteplace again

opined, this time based on the footage, that the weapon was a revolver. Because the actual weapon was never recovered, Phetteplace could only give general testimony about revolvers, which the State was sure to reemphasize:

Q. And so without having analyzed this revolver, you can't really give us very many characteristics about it, right?
A. That's right.
Q. But, in general, a single-action revolver, to be clear, if you're going to shoot it twice, you have to pull the hammer back and pull the trigger, pull the hammer back and pull the trigger.
A. That's correct.
Q. And for a double-action, you have to pull the trigger twice?
A. Yes.
Q. In general — well, I guess you have analyzed quite a few firearms over the course of your career, haven't you?
A. Yes, I have.
Q. In particular, you've analyzed several — I mean, quite a few revolvers; is that right?
A. Yes.
Q. I guess, generally speaking, what type of resistance or pounds of pressure do you usually see on a double-action revolver on the trigger?
A. On a double-action, I've seen them as low as 8 pounds. I've seen them as high as 15 pounds.
Q. What does that mean?
A. Pounds of force. This is different than pounds of weight. Like a gallon of milk weighs 10 pounds, we're not talking about weight. We're talking about force.
So to open, like, a soda can, the pull tab on a soda can takes about 8 pounds of force. So that's a relative term. Some are lighter; some are heavier, take more force or less force.
Q. So you said you've seen as low as 8 and as high as how much?
A. 15.
Q. 15?
A. For a double-action.
Q. So in order to pull a trigger on a double-action, you have to have anywhere between 8 to 15 pounds of force pulling that back?
A. In general, yes.
Q. In general.
A. Yes.

On cross-examination, defense counsel asked Phetteplace about the possibility that a gun could just

go off:

> Q.     You always have to pull a trigger to fire a gun, right?
> A.     Yes, sir.
> Q.     All right. I mean, it doesn't just explode.
> . . .
> Q.     It doesn't just fire by itself, does it?
> A.     Not unless there's something wrong with it.

In closing arguments, the prosecutor reminded the jury of Phetteplace's testimony:

> Additionally, there were two shots. And this is huge. Okay? The Defense said in their opening statements that the gun went off. We heard from Stacey Phetteplace about how revolvers work, about you have a single-action revolver and a double-action revolver.
> . . . Stacey Phetteplace said in order to shoot a single-action revolver, you would take the gun, pull the hammer back, and then pull the trigger. So if Dameon Mosley's gun was a single-action firearm, during the altercation, he would have had to have pulled the hammer back, either with his thumb or his other hand, and pull the trigger for that gun to go off.
> And then to do the second shot, he would have had to have pulled the hammer back and pulled the trigger for the second shot. That's intent. To pull the hammer back and then pull the trigger, that shows you that Dameon Mosley intended to kill Billy Stacks.
> But we don't know if it was a single or double-action revolver. Okay? If it was a double-action revolver, he has to pull the trigger each time the gun fires. And each time he pulls the trigger, that's intent to kill, every single time every day.

In rebuttal argument, the State again focused on the nature of revolvers:

> Two shots, two pulls of the trigger.
> Now, certainly, if it was a single-action revolver that Mr. Mosley is having to pull the trigger or pull the hammer back and then pull the trigger twice, that would be better for the State. It takes a lot more effort to do that. We've all seen the Old West movies. It doesn't appear from the video that's what this is.
> This is a double-action revolver. But that means you heard from Stacey Phetteplace, you're going to need at least 8 pounds — somewhere from 8 and 15 pounds is standard for double-action revolvers, to pull that trigger back and have it fire.

Defense counsel failed to appreciate the significance of the revolver. Instead, during closing argument counsel sidestepped the issue:

> Single-action, double-action revolver, we don't have the gun. We don't know what the capabilities of the gun were. We don't know what the firing pattern had to be. We don't know whether it had to be cocked or not cocked. We don't know any of that information.
>
> So you can't make assumptions on evidence you don't have, but you can use your common sense about what happens when there is a struggle and a gun is in the middle of that struggle.

Defense counsel was correct that they did not have the actual gun, and the specific characteristics of the actual gun were unknown. But the evidence the jury did have showed that the gun was a revolver, and the jury's common sense must be informed by that fact.

Of course, the best approach would be to have the gun itself examined and tested to determine whether the gun is defective. If not, the gun should be examined to determine the pull weight of the trigger, especially if it is a double-action revolver. But in cases such as Appellant's where the gun is never recovered yet it is at least clear that the weapon was a revolver, attorneys on both sides of the aisle must be aware that this is a significant factor in the case. Even without the actual revolver, being cognizant of the mechanics of how revolvers work in general will allow prosecutors and defense counsel to not only know how to rebut a "gun just went off" argument, but to assess whether such an argument is even viable. While attorneys could make that assessment through their own judgment if they are familiar with revolvers, they would all be well-served by consulting with an expert who could, like Phetteplace in the case before us, present important testimony at trial.

When a revolver is involved, how those particular firearms work goes to the very heart of intent. Single-action revolvers require the very deliberate action of cocking the hammer. Double-action revolvers, although not requiring the hammer to be manually cocked, require forceful trigger

pulls.[2] In my view, the prosecutor correctly handled the fact that Appellant used a revolver.

We need to put an end to meritless "the gun just went off" arguments. Almost all revolvers do not accidentally "just go off." As I said before, it is virtually impossible for a revolver to go off without deliberate action. *See Piper*, 2019 WL 4315756, at *7. Not only do revolvers require an intentional pull of the trigger, single-action revolvers require the hammer to be manually cocked, and double-action revolvers require much more force to pull the trigger when the hammer is not already cocked. If a double-action revolver's hammer *is* cocked, then the same deliberateness is present as it would be with a single-action. When a revolver is fired, it is almost never an accident. That Appellant fired it *twice* seals the deal.

Filed: April 12, 2023
Publish

---

[2] There are, of course, exceptions to the general rule, and revolvers exist outside of the single-action and double-action, such as the Webley-Fosbery Automatic Revolver or the Mateba Model 6 Unica. If the evidence shows the gun is, in fact, an automatic revolver, counsel on both sides again must be aware how this could change their trial strategies.